The State, *ex rel.* Yancey, *v.* Hyde.

No. 15,126.

# THE STATE, EX REL. YANCEY, *v.* HYDE.

CONSTITUTIONAL LAW.—*Department of Geology.—Appointment of Officers.—Provision Relating to.—Unconstitutionality of.*—The act of the General Assembly (Elliott's Suppl., sec. 1863), establishing a department of geology and natural resources, four divisions being included, whose chiefs are to be appointed by the director of the department elected by the Legislature, is unconstitutional and void, falling within the inhibition of article 3, section 1, of the Constitution, in so far as it seeks to deprive the executive of the State of his constitutional prerogative to fill by appointment vacancies in the offices named.

SAME.—*Inspector of Mineral Oils.—State Office.—Creation of by Legislature.—Vacancy.—Governor's Right to Fill.*—The inspector of mineral oils, one of the divisions above named, is a State officer, and the office a State office, and the Legislature having created the office, but having no power itself to fill it, or to vest the director of the department with the power, on the instant of its creation the office was vacant, and the Governor had the right to fill by appointment such vacancy.

SAME.—*Appointing Power.—Executive Function.—When Legislature may Exercise.*—While the power to appoint to office is intrinsically an executive function it is exercisible by the Legislature, or the courts, as an incident of the principal power, *i. e.*, where necessary to the exercise of such legislative or judicial power.

SAME.—*Residuum of Power.—Where Resident.*—The residuum of power abides with the people, and the three governmental departments have only such power as has been delegated to them in the Constitution.

SAME.—*Appointment of Officers.—Section 1 of Article 15 Construed.*—Under article 15, section 1, of the Constitution, providing for the appointment of officers not otherwise provided for in that instrument, the Legislature, where the Constitution does not provide otherwise for the filling of a vacancy in an office, may provide the manner in which it shall be filled; but unless it is an office created for the purpose of enabling one of the other departments the better to perform its functions the power of appointment must be lodged with the executive department.

SAME.—*Legislature.—Article 15, Section 1.—Appointing Power Conferred by.*—Article 15, section 1, confers no appointing power on the Legislature except as to offices in existence when the Constitution came into force.

SAME.—*Officers.—Provisions for Appointment.—Present Constitution.—Departure from the Old.—Presumption.*—All the officers provided for in the present Constitution having been made elective by the people, a radical de-

The State, *ex rel.* Yancey, *v.* Hyde.

parture from the provisions of the old Constitution, and other State offices soon after the adoption of the new Constitution having been created and made elective, the presumption is that all State offices are elective, and that vacancies may be filled by executive appointment until a general election by the people.

SAME.—*Pleading.*—*Complaint.*—*Insufficiency of.*—The said office being a State office, the Legislature could not delegate the power of appointment to it to another State officer, and a complaint by a relator seeking to recover possession of the office against an appointee of the director of the department elected by the Legislature, which fails to allege the relator's appointment by the Governor, is technically bad.

ELLIOTT, C. J., and MITCHELL, J., dissent.

From the Marion Circuit Court.

*L. T. Michener,* Attorney General, *A. J. Beveridge, L. M. Campbell, J. H. Gillette* and *A. C. Harris,* for relator.

*J. E. McCullough, L. P. Harlan* and *S. J. Peelle,* for respondent.

BERKSHIRE, J.—This action is brought by the appellant to obtain from the appellee, and for the relator, possession of a certain office, and the privilege to exercise the duties thereof, known and designated as " chief of the division of mineral oils."

The complaint alleges the following state of facts, to wit: That on the 9th day of May, 1889, the Governor of the State of Indiana properly and lawfully appointed and commissioned one John Collett as " director of the department of geology and natural resources of the State of Indiana;" that on the 11th day of May, 1889, the said John Collett took and subscribed the oath of office on the back of said commission, and on said day deposited a duly certified copy of said oath in the office of the secretary of state of Indiana; that the said Collett possessed the requisite qualifications, etc.; that on said day the said John Collett, as such director, etc., duly and lawfully appointed and commissioned the relator herein chief of said division, etc., under the name and style of " inspector of mineral oils;" that on the 11th day of May, 1889, said relator took and subscribed the oath

of the office, as required by law, and on said day filed the same in the office of the secretary of state, and on said day executed a bond to the State of Indiana in the sum of $10,000, conditioned, etc., and that the relator was duly qualified, etc.; that soon after the relator's appointment and qualification he appointed a suitable number of deputies, and in every way prepared himself to perform the duties of his office, and is still prepared so to do; that on the 28th day of February, 1889, one Sylvester S. Gorby intruded into and now usurps and unlawfully holds and exercises the said office of "director of the department of geology and natural resources for the State of Indiana," by virtue of a pretended election to said office by the General Assembly of the State of Indiana at its last session; that he is unlawfully exercising and holding, and pretending to exercise and perform the duties of said office; that on the 28th day of February, 1889, said Gorby unlawfully pretended to appoint the defendant herein to be "chief of the bureau of mineral oils," under the name and title of "inspector of mineral oils;" that acting under said pretended appointment the said defendant, on said 28th day of February, 1889, intruded into and now usurps and unlawfully holds and exercises the duties of "inspector of mineral oils," collecting fees, etc.; that the defendant now is, and always has been, without any other claim or title to said office than as above stated; that after the relator's appointment and qualification he demanded the possession of said office of said defendant, who refused, and still refuses, to surrender the same. Wherefore, etc.

In an act of the General Assembly for the State of Indiana, which came into force on the 26th day of February, 1889, Elliott's Supplement, beginning with section 1863, we find the following provisions:

"SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That a department of geology and natural resources is hereby established for the purpose of continuing and perfecting the geological and scientific sur-

vey of this State, of discovering, developing and preserving
its natural resources; recommending and securing the en-
forcement of laws providing for the health and personal
safety of all persons engaged in developing or using the
products of its natural resources, and collecting and dissem-
inating information concerning its agricultural, mining and
manufacturing advantages.   The said department shall com-
prise four divisions, as follows:    *First.* The division of ge-
ology and natural science.   *Second.* The division of mines
and mining.   *Third.* The division of mineral oils.   *Fourth.*
The division of natural gas.

"Sec. 2.   The General Assembly shall, immediately
after the taking effect of this act, elect a competent and suit-
able person, skilled in geology and natural sciences, director
of the department of geology and natural resources, who
shall be state geologist and curator of the museum and
chief of the division of geology and natural science.   He
shall take an oath of office, as other officers, and hold his office
for a term of four years, and until his successor is elected and
qualified.   He shall appoint the chiefs of divisions provided
for in this act, and such other assistants as he may deem
necessary in prosecution of the work in the division of geol-
ogy and natural science, but in no case shall the expendi-
tures under his direction exceed the amount authorized by
the General Assembly.   The Governor shall, by appoint-
ment, fill any vacancy that may occur in the office of director
of the department, from any cause, when the General As-
sembly is not in session, and the person so appointed shall
serve as director of the department until the next succeed-
ing session of the General Assembly, when a successor shall
be elected by the General Assembly :    *Provided, however,*
That no such appointee shall, during such temporary hold-
ing, remove any of the chiefs of divisions then serving, but
may temporarily fill any vacancies in said offices of chiefs
of divisions that may occur by reason of death, resignation
or removal from the State during his incumbency of said

office of director. The compensation of the director of the department shall be two thousand dollars per year, to be paid as other salaries are required by law to be paid.

"Sec. 6. The office of state inspector of oils is hereby abolished, and the chief of the division of mineral oils, who shall be known as the inspector of mineral oils, shall in all respects perform all the duties now required by law of the state inspector of oils, and receive therefor the same fees and compensation now provided by law for the state inspector of oils. His annual report shall be made to the director of the department, and shall be included in the published report of the director of the department, and he and his assistants shall, in every way, comply with the law pertaining to the inspection of oils not repealed by the provisions of this act."

For the duties and compensation of the " inspector of mineral oils," we are, by the act creating the office, referred to an act of the Legislature, approved September 19, 1881, beginning with section 5151, R. S. 1881.

We do not deem it necessary to make any quotation from that act. It is sufficient to say, that the duties of the inspector of mineral oils pertain to the State at large, and are to be performed for the benefit of the whole people of the State. He is not confined, in the performance of his official duties, to any locality or district, but his authority extends over the entire State. That he is a public functionary there can be no question ; the duties which he has to perform are public duties. The act of the Legislature creating the office and defining the duties of the incumbent recognizes him as a public officer, and the position which he holds as an office for the benefit of the public. And as he is an officer whose duties are co-extensive with the State, he is necessarily a State officer.

Having arrived at the conclusion that the office is a State office, and its incumbent a State officer, we are confronted with the question, was there a vacancy in the office at the

time the relator claims to have been appointed? This question divides itself into two inquiries:

*First.* Has the Legislature the same general power to fill that it has to create offices?

*Second.* If it has, then may it create two offices, elect the incumbent to one of them, and provide that he shall appoint the incumbent to the other?

Unless the two inquiries can be answered in the affirmative there was a vacancy in the office in question when the relator claims to have been appointed, for the reason that there was a vacancy *eo instanti*—the creation of the office. In our State Constitution we find the following constitutional provision:

" Article 3, section 1. The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial, and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

The word " function," as here used, means duty; and the clause may be read, " and no person charged with official duties under one of these departments shall exercise the duties of another, except as in this constitution expressly provided." This constitutional provision is easily understood; it is clear and concise in expression.

When applied to the question under consideration, one of two conclusions must follow, or the Legislature was without power to elect the director of the department of geology and natural resources, and therefore without power to confer upon him the power to appoint the appellee to the office in question: (1) The power to appoint to office must be a legislative function, or (2) express power must be lodged somewhere in the Constitution to make such appointment.

We can not give our consent to the affirmative of either of these propositions.

The first inquiry then is, what is legislative power? We

copy from the case of *City of Evansville* v. *State, ex rel.*, 118 Ind. 426, commencing on page 441 : " The word ' legislative ' is defined by Worcester as follows : ' That makes or enacts laws; law making. " Legislative power." Of, or pertaining to, legislation or to a Legislature ; as, " Legislative proceedings." ' Legislative ' is defined by Zell as follows : ' Making, giving, or enacting laws. Relating or pertaining to the passing of laws.' Webster defines ' legislative ' as follows : ' Giving or enacting laws ; as, a legislative body. Pertaining to the enacting of laws ; suitable to laws ; as, the legislative style. Done by enacting ; as, a legislative act.' Wharton, in his lexicon, defines ' Legislation,' as follows : ' The act of giving or enacting laws.' 'Legislature: the power to make laws.' Abbott, in his law dictionary, under the head of ' legislate,' has the following : ' To make laws. * * Legislature : the body of persons in the State clothed with authority to make laws. * * * Legislative power : that one of the three great departments into which the powers of government are distributed— legislative, executive and judicial —which is concerned with enacting or establishing, and incidentally with repealing, laws.' "

" We find the following in *Sinking-Fund Cases*, 99 U. S. 700, 761, speaking of the judicial and legislative departments : ' The one determines what the law is, and what the rights of parties are, with reference to transactions already had ; the other prescribes what the law shall be in future cases arising under it.' Legislative power is the power to enact, amend or repeal laws. *Lafayette, etc., R. R. Co.* v. *Geiger, supra ;* Cooley Const. Lim. 90 ; *Hawkins* v. *Governor,* 1 Ark. 570 ; *Wayman* v. *Southard,* 10 Wheat. 1, 46 ; *Greenough* v. *Greenough,* 11 Pa. St. 489."

When we come to examine article 4 of the Constitution, we find that the powers and restrictions placed upon the legislative department are more specific and definite than are applied to either of the other departments. We continue the quotation :

The State, *ex rel.* Yancey, *v.* Hyde.

" Article 4 is composed of many sections, but they all relate to the exercise of legislative power and matters incidentally connected therewith. Section 16 of that article reads : ' Each house shall have all powers necessary for a branch of the legislative department of a free and independent State.'

" We quote the following from a very able opinion by Chief Justice Thompson, in *Page* v. *Allen*, 58 Pa. St. 338 (98 Am. Dec. 272) : ' The expression of one thing in the Constitution, is necessarily the exclusion of things not expressed. This I regard as especially true of constitutional provisions, declaratory in their nature. The remark of Lord Bacon, " that, as exceptions strengthen the force of a general law, so enumeration weakens, as to things enumerated," expresses a principle of common law applicable to the Constitution, which is always to be understood in its plain, untechnical sense. *Commonwealth* v. *Clark*, 7 W. & S. 127.'

" If article 3, section 1, had never been placed in the Constitution, the rule of construction as stated by Judge Thompson and Lord Bacon, applied to section 16 of article 4, *supra,* would exclude the Legislature from exercising any other than legislative power. But the framers of the Constitution were not satisfied, after the experience that the people had had under the old Constitution, to rely upon the well known rules of legal construction, and, therefore, section 1, article 3, was placed in the Constitution, expressly confining each department to its own jurisdiction and functions, except so far as expressly provided otherwise."

At this point we desire to call attention to the case of *Wright* v. *Wright*, 2 Md. 429 (56 Am. Dec. 723) : " By the third section of the bill of rights, the inhabitants of Maryland are declared entitled to the common law of England, ' subject nevertheless to the revision of, and amendment or repeal by, the Legislature of this State.' And by the sixth section of the same instrument it is said, ' the legislative, executive and judicial powers of government, ought to be for-

ever separate and distinct from each other.' The evident purpose of the declaration last quoted, is to parcel out and separate the powers of government, and to confide particular classes of them to particular branches of the supreme authority. That is to say, such of them as are judicial in their character to the judiciary; such as are legislative to the Legislature, and such as are executive in their nature to the executive. *Within the particular limits assigned to each they are supreme and uncontrollable.*"

The powers of the three great governmental departments are classified under our Constitution, the same as in the Maryland Constitution, but in ours the language is much more emphatic and explicit. Whatever may be said of the Constitutions of other States, it can not be successfully maintained that under the Constitution of this State the Legislature possesses latent, or undefined power.

Looking to the different provisions of our Constitution any argument which can be made to maintain the affirmative of this proposition will apply equally to the other departments; each derives all the power which it has by virtue of the Constitution.

It must be conceded that ours is a State government, made up of delegated powers; to deny this is to deny that the people are the source of power. Originally all power resided with the people; this proposition we have never found contradicted by any court, or writer upon elementary law. We start, then, with this proposition, the people are the source of all power. It follows, therefore, as a logical conclusion, that until they divest themselves of that power it continues to abide with them.

When the Constitution of 1816 was set aside, the people thereby resumed to themselves their original power. When they adopted the present Constitution they parted with some part of that original power. The inquiry then arises, what became of it?

They delegated legislative power to the Legislature, judi-

cial power to the judiciary, and that of an executive character to the executive of the State, with certain limitations.

At the risk of extending this opinion, we must quote again section 1, article 3 :

" The powers of the government are divided into three separate departments; the legislative, the executive, including the administrative, and the judicial; and no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided."

This article of the. Constitution being the one relating to the distribution of powers between the three departments of the State government, how can it be asserted, with any regard for the rules of logic and reason, that the Constitution simply imposes a limitation on the legislative department, and is, at the same time, but a grant as to the other departments. The correct and logical conclusion must be that the residuum of power abides with the people, and that the three governmental departments have only such power as has been delegated to them in the Constitution. Any other position is illogical and inconclusive.

We take the following from the opinion in the case of *State, ex rel. Holt,* v. *Denny,* 118 Ind. 449: "At the adoption of the State Constitution all power was vested in the people of the State. The people still retain all power, except such as they expressly delegated to the several departments of the State government by the adoption of the Constitution. The legislative, executive and judicial departments of the State have only such powers as are granted to them by the Constitution. In the first section and first article of the Constitution it is declared ' that all power is inherent in the people.' It is contended by counsel that as certain rights were granted and certain other rights reserved by the people, therefore all rights were granted, except such as were expressly reserved. The peculiarity of the theory is, that while the people, by the Constitution, made grants of

power to three different departments of government, it is contended that all power that was at that time in the grantor, the people, passed to one branch of the government, viz., the political or legislative branch, and that it took all power not mentioned in the instrument, and the executive and judiciary took only such as was expressly granted to them, and the people retained such only as was specifically named and reserved. It is certainly a novel method of construction, and contrary to all the rules for construing contracts, deeds, wills and other written instruments, and it seems to us that the proposition need but to be stated to prove its fallacy."

That the power to appoint to office is not a legislative function it seems there can be no question.

Is it an executive function ? That the power to appoint to office is intrinsically an executive function, has been decided over and over again, and so held by this as well as other courts.

Upon this question, so long settled and well understood, there ought to be no difference of opinion, and there has been no contention to the contrary until within the last few years.

In the case of *State, ex rel.*, v. *Noble,* 118 Ind. 350, beginning on page 361, the judge delivering the opinion said : " Counsel for the defendants refer us to the case of *Taylor* v. *Com.*, 3 J. J. Marsh. 401, where it is held that the appointment to office is intrinsically an executive function. Other courts have asserted a like doctrine. Thus, it was said in *State* v. *Barbour*, 53 Conn. 76, that 'Appointments to office, by whomsoever made, are intrinsically executive acts.' But if we were to accept this doctrine as correct, and give it full application, then it would completely destroy the claim of the defendants, for if the right to appoint can never be anything else than an executive act, the attempt of the Legislature to appoint the claimants was utterly abortive. But we do not understand the authorities to assert that the selection of offi-

cers is always an executive act ; on the contrary, the authorities hold that, while the power is *intrinsically* executive, it may be exercised by a court or by a legislative body, as an incidental power of an independent department of the government. No one would, we confidently assume, be so bold as to assert that the Legislature may not appoint officers connected with its duties and proceedings, and there is no more reason for denying the power to the courts than there is of denying it to the Legislature. The truth is, that all independent departments have some appointing power, as an incident of the principal power, for without it no department can be independent. *State* v. *Barbour, supra; Achley's Case,* 4 Abbott Pr. Rep. 35.'

" We are not here dealing with the general power to appoint, but we are dealing with a single phase of the general question, and we do no more than affirm that each department must have, and does have, some appointing power, and that where an appointment is essential to the proper exercise of a judicial duty, the court concerned has authority to make the appointment. If this be not true, then no court can appoint a guardian, an administrator, a receiver, a referee, an appraiser or a commissioner. It is, in truth, impossible to conceive of the existence of an independent judicial department without the power to make some appointments."

The quotation which we have made lays down the correct rule, if we understand it correctly. That is, that the power to appoint to office is an executive function, but may be exercised by the Legislature, or the courts, as an incident of the principal power, that is, where necessary to the exercise of that legislative or judicial power. This must be so, otherwise it would be impossible for either the judicial or legislative departments to exercise the powers delegated to them.

The following is a quotation from *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382, beginning on page 386 :

" It is claimed that the appointment to an office is an executive function, and that by the terms of our Constitution

the General Assembly is prohibited from filling an office created by it, unless such office is connected with the duties imposed upon it as a legislative body. This contention arises out of the provisions of section 1, article 3 of the Constitution, which is as follows. (The constitutional provision is then set out). In the case of *Wright* v. *Defrees*, 8 Ind. 298, it was said by this court that 'The powers of the three departments are not merely equal,—they are exclusive, in respect to the duties assigned to each. They are absolutely independent of each other.'

" In the case of *Lafayette, etc., R. R. Co.* v. *Geiger*, 34 Ind. 185, this court, in speaking of the above constitutional provision, says : ' The same division of powers exists in the Federal Constitution, and in most, if not all, of the State Constitutions, and is essential to the maintenance of a republican form of government. These departments of government are equal, coördinate, and independent. The duties imposed on each are separable and distinct, and it is expressly provided, that " no person, charged with official duties under one of these departments, shall exercise any of the functions of another." The persons charged with the execution of these powers are alike elected by, and are responsible to, the people, in whom resides the sovereignty of the State. This division of power prevents the concentration of power in the hands of one person or one class of persons.

" The same language is used substantially in *Smith* v. *Myers*, 109 Ind. 1 ; *State* v. *Governor*, 1 Dutch. 331 ; *Ex Parte Dennett*, 32 Me. 508 ; *Low* v. *Towns*, 8 Ga. 360 ; *Mauran*, v. *Smith*, 8 R. I. 192 ; *Hawkins* v. *Governor*, 1 Ark. 570 ; *Houston, etc., R. W. Co.* v. *Randolph*, 24 Texas, 317 ; *People* v. *Bissell*, 19 Ill. 229; *Dickey* v. *Reed*, 78 Ill. 261 ; *Rice* v. *Austin*, 19 Minn. 103 ; *Western R. R. Co.* v. *DeGraff*, 27 Minn. 1 ; *Secombe* v. *Kittleson*, 29 Minn. 555 ; *Sill* v. *Village of Corning*, 15 N. Y. 297 ; *People* v. *Albertson*, 55 N. Y. 50 ; Cooley Const. Lim., star pp. 87, 88, 93, 114, 175 ; Sedgw. Const. & Statute Constr. (2d ed.), 132, 138, 184. * *

The State, *ex rel.* Yancey, *v.* Hyde.

" Judicial power is the power to construe and interpret the Constitution and the laws, and make decrees determining controversies, and is vested in the courts.

" The executive power is the power to execute the laws, and is vested in the Governor of the State, the administrative officers of the State, counties, townships, towns and cities. Then, to which one of these departments does the appointment to office belong?

" If the General Assembly should create an office, by statute duly passed by it, providing that it should be filled by appointment, the act of filling such office is a partial execution of the law. * *

" Generally, then, the appointment to an office is an executive function. It must be conceded, however, that it is not every appointment to office which involves the exercise of executive functions, as, for instance, the appointments made by judicial officers in the discharge of their official duties, or the appointments made by the General Assembly of officers necessary to enable it to properly discharge its duties as an independent legislative body, and the like. Such appointments by the several departments of the State government are necessary to enable them to maintain their independent existence, and do not involve an encroachment upon the functions of any other branch. But the appointment to an office like the one involved here, where it is in no manner connected with the discharge of legislative duties, we think involves the exercise of executive functions and falls within the prohibition of section 1, article 3 of the Constitution."

In *City of Evansville* v. *State, ex rel., supra,* it was said: " The power to appoint to office is not a legislative function, but belongs to the executive department of the government;" and the cases of *Lafayette, etc., R. R. Co.* v. *Geiger, supra; Hawkins* v. *Governor, supra; Wayman* v. *Southard,* 10 Wheat. 1; *Greenough* v. *Greenough,* 11 Pa. St. 489, and

Cooley Const. Lim. 90, cited.   See *State, ex rel. Holt,* v. *Denny,* 118 Ind. 449.

In Am. & Eng. Encyc. of Law, vol. 3, 686, we find the following statement of the law :   " The power of appointing and removing subordinate executive officers is generally, by the American Constitutions, vested in the chief executive."

We come now to the other branch of the question.   Does the Constitution confer upon the Legislature express power to fill a vacancy in an office of the character of the one under consideration, or, like that of " director of the department of geology and natural resources."   If there is such a constitutional provisions we have failed to find it, and our attention has been called to none.

The word " expressly " being the word that is employed in the constitutional provision, section 1, article 3, Worcester defines as follows :   " In direct terms; plainly."   He defines the word " express " as follows:   " Given in direct terms; not implied ; not dubious ; clear ; definite ; explicit ; plain ; manifest."

The word " expressly " is defined by Zell as follows :   " Not by implication ; plainly ; distinctly."   The word " express " he defines as follows :   " To set forth in words ; clear ; plain ; direct ; not ambiguous."

Webster's definition of " expressly " is :   " In an express, direct, or pointed manner ; in direct terms ; plainly."   His definition of the word " express " is :   " Directly stated ; not implied or left to inference ; distinctly and pointedly given ; made unambiguous by special intention ; clear ; plain."

The only constitutional provisions that in any way relate to the subject under consideration are the following.

Section 13, article 2, which reads as follows :   " All elections by the people shall be by ballot ; and all elections by the General Assembly, or by either branch thereof, shall be *viva voce.*"

Section 30, article 4 :   " No senator or representative shall, during the term for which he may have been elected, be eli-

gible to any office, the election of which is vested in the General Assembly ; nor shall he be appointed to any civil office of profit, which shall have been created, or the emoluments of which shall have been increased, during such term ; but this latter provision shall not be construed to apply to any office elective by the people."

Section 10, article 4 : " Each house, when assembled, shall choose its own officers (the president of the senate excepted), judge the elections, qualifications, and returns of its own members, determine its rules of proceeding, and sit upon its own adjournment. But neither house shall, without the consent of the other, adjourn for more than three days, nor to any place other than that in which it may be sitting."

Section 5, article 5 : " The persons, respectively, having the highest number of votes for Governor and Lieutenant-Governor shall be elected ; but in case two or more persons shall have an equal, and the highest, number of votes for either office, the General Assembly shall, by a joint vote, forthwith proceed to elect one of the said persons Governor or Lieutenant Governor, as the case may be."

Section 18, article 5 : " When, during a recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly ; or when, at any time, a vacancy shall have occurred in any other State office, or in the office of judge of any court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

Article 15, section 1 : " All officers whose appointments are not otherwise provided for in this Constitution shall be chosen in such manner as now is, or hereafter may be, prescribed by law.".

All the foregoing sections, except the last one, are, as will be observed by reading them, so foreign to the question under

consideration that we need call attention to none of them except the last one.

It is quite clear, we think, that under the provisions of this section, where the Constitution does not provide otherwise for the filling of a vacancy in an office, that the Legislature may provide the manner in which it shall be filled. But unless it is an office created for the purpose of enabling one of the other departments the better to perform its functions, the power of appointment must be lodged with the executive department. This constitutional provision confers no appointing power on the Legislature except as to offices in existence when the Constitution came into force.

The power to create an office is one thing, and the power to appoint the incumbent is another; the one is a legislative act, and the other is, as we have seen, an executive function.

In *Jones* v. *Perry*, 10 Yerger, 59 (30 Am. Dec. 430), it is said : " The fact that the Constitution may prescribe that the mode of appointing the judges shall be by the Legislature does not constitute the Legislature the constituent." See *State* v. *Kennan*, 7 Ohio St. 546 ; *City of Evansville* v. *State, ex rel., supra; State, ex rel., Jameson,* v. *Denny,* 118 Ind. 382; *State, ex rel.,* v. *Noble, supra.* To hold otherwise would be to wipe out, by judicial construction, article 3, section 1.

" The Legislature, like other departments of the State government, can only exercise such powers as have been delegated to it, and when it steps beyond that boundary its acts, like those of the most humble magistrate in the State who transcends his jurisdiction, are utterly void." *Taylor* v. *Porter,* 4 Hill, 140 (40 Am. Dec. 274); *Pumpelly* v. *Village of Oswego,* 45 How. Pr. R. 219 ; *Campbell's Case,* 2 Bland, 209 (20 Am. Dec. 360, 373). And the following from *State, ex rel.,* v. *Noble, supra,* which is equally applicable to the executive as to the judicial departments : " The domain of the judiciary is not so extensive as that of the other departments, but no other power can enter that domain with-

out a violation of the Constitution, for within it the power of the judiciary is dominant and exclusive.

In *Wright* v. *Defrees, supra*, it was said : " The powers of the three departments are not merely equal,—they are exclusive, in respect to the duties assigned to each." And *Wright* v. *Wright, supra*, is to the same effect.

In the Am. and Eng. Encyc. of Law, vol. 3, 685, it is said : " Such powers as are specially conferred by the Constitution upon the executive department, or upon any designated officer, the Legislature can not require or authorize to be performed by any other officer or authority. * * * * Where the Constitution confers the power of appointing to office upon the executive department, appointments can not be made by legislative enactment."

But as the opinions delivered in the cases of *State, ex rel. Holt,* v. *Denny, supra; State, ex rel. Jameson,* v. *Denny, supra;* and *City of Evansville* v. *State, ex rel., supra,* discussed and passed upon the power of the Legislature to create offices and fill vacancies therein, and in this particular were concurred in by a majority of the court, we do not understand that the power of the executive department to appoint to offices like the one involved in this case is longer an open question. As the writer of this opinion said, in the opinion in *City of Evansville* v. *State, ex rel., supra,* and says now, speaking merely for himself: " Practical construction is of very little consequence when it is exercised in violation of the plain provisions of the Constitution." It is of more importance and consequence when it is in accord with the Constitution, but whether entitled to much or little weight, to the extent that there has been such construction, it seems to have been in favor of the power of the executive department to appoint officers belonging to the class in question. But suffice as to this. Section 5152, R. S. 1881, fixed the term of office of the " state inspector of oils " at two years, and as section 1868, Elliott's Suppl., refers to the former act for the duties and emoluments of said officer we are inclined to the opinion

that it still governs as to the term of his office, as no term is fixed by the latter act.

As all the officers provided for in the present Constitution were made elective by the qualified voters of the State, which is, in this respect, radically different from the provisions of the old Constitution, and in view of the fact that soon after the adoption of the present instrument other State offices were created and made elective, we must presume that it was, and is, the spirit and intention of the present Constitution that all such offices as relate to the public at large, either district or State, are elective, and that when a vacancy occurs the executive department may appoint and commission until the next following general election, at which time the people may elect an incumbent to said office.

The complaint fails to allege that the Governor of the State had theretofore appointed and commissioned the relator to fill the said vacancy in said office, and is, for that reason, technically bad.

The said office being a State office, the Legislature could not delegate the power to some other State officer to appoint and commission the relator, though that officer may have been duly appointed and commissioned. In so far as the act of the Legislature seeks to deprive the executive of the State of his constitutional prerogative to fill by appointment vacancies in the offices named in said act of February 26, 1889, it is unconstitutional and void. The said act may antagonize another provision of the Constitution, but as the question is ignored in the briefs of counsel we have not considered it. We refer to section 16, article 5, of the Constitution. Because of the absence of an averment in the complaint that the relator had been appointed by, and held a commission from, the Governor of the State, the complaint is bad, and the court did not err in overruling the demurrer thereto.

Judgment affirmed, with costs.

Filed Nov. 7, 1889.

The State, *ex rel.* Yancey, *v.* Hyde.

## SEPARATE OPINION.

COFFEY, J.—I concur in the reasoning and conclusion reached in this case, as well as in the case of *State, ex rel. Worrell* v. *Peelle, post,* p. 495.

Under the Constitution of 1816, the Legislature of the State possessed the power to elect the administrative State officers and the presiding judges of the circuit courts, while the Governor of the State possessed the power to appoint, with the concurrence of the senate, the judges of the Supreme Court. The history of the State I think fully demonstrates that the people were dissatisfied with this arrangement, and regarded it as an encroachment upon their rights, and demanded the right to select their own public servants. One of the objects sought in calling the convention which framed our present Constitution was to effect a revolution in this particular. There is, in my judgment, abundant evidence both in the Constitution itself and in the debates attending the framing of that instrument, that the convention adjourned under the full conviction that it had fully performed the mission for which it had been called into existence. Every State officer which, by the Constitution of 1816, was elected by the Legislature, was, by our present Constitution, made elective by the people. If there is any provision in the Constitution which confers upon the Legislature the power to elect any officer falling strictly within the definition of a State officer, charged with duties affecting the whole people of the State, I have been unable to find it; and my attention has not been called to any such provision.

The fact that no such provision can be found is, to my mind, conclusive evidence that it was not intended to confer any such power.

It is a rule, elementary in its character, that statutes and constitutional provisions are to be construed in the light of the history attending their passage, or adoption, and they

must be so construed, if possible, as to effect the object sought to be attained. I believe it to be a fact, not denied, that one of the objects sought to be attained in calling the convention which framed our present Constitution was to effect a complete revolution in the manner of electing State officers, by depriving the Legislature of that right and reserving it to the people. To say that the convention did not accomplish that object is, in my opinion, equivalent to asserting that it adjourned without accomplishing the object for which it was called. History teaches us that successful revolutions never go backward, and that they are much more likely to go beyond the objects first sought than to fall short. In my opinion the constitutional convention which framed our present Constitution did not fail to accomplish the things which called it into existence, and that it has left to the people of the State the exclusive power to elect all State officers whose duties are of a general character like those under consideration. The history of the State since that time, in my judgment, confirms this view.

Although the Legislature has created many State offices since 1851, I am unable at this time to call to mind a single instance in which it attempted to fill such office by its own election for much more than a quarter of a century after the adoption of our present Constitution. The claim to such right is of recent origin, and in my opinion no such right exists. I am of the opinion that the people at large have the right to elect, at any general election, the state geologist and state statistician. The moment the Legislature creates such office the right to fill it by election vests in the people, and they can not be constitutionally deprived of such right. The claim that by reason of the fact that the Legislature created these offices, and attached to them peculiar or particular duties, gave them the right to fill such offices, would apply, I think, as well to the office of attorney general and reporter of the Supreme Court as to these offices.

The truth is, that by delegating to the people the right to

elect their circuit and supreme judges, and superintendent of public instruction, the convention furnishes us with unequivocal evidence of its abiding faith in the discriminating intelligence of the people, and their ability to select their own officers, however difficult or complicated their duties might be.

Our general election laws are broad enough to authorize the election of these officers, as well as any other State officer, and until such time as the people shall have an opportunity to fill them by an election, the Governor of the State has the right, in my judgment, to fill the vacancy by appointment. The officer so appointed would be entitled to hold his office until his successor is elected and qualified, and not longer.

Filed Nov. 7, 1889.

## DISSENTING OPINION.

ELLIOTT, C. J.—I am fully persuaded that the Legislature ought not to have the general power to create and to fill offices of its own creation, and that if the opinions of the great thinkers of our country had been given full force it would have no such power; but, while I am persuaded that it should not have this power, my judgment is thoroughly convinced that it does have power to create and to fill a class of offices, and that the office in controversy belongs to that class. I regret the conclusion, but I can not escape it. I have searched with all possible care, but I can find no decision which sustains the contention of the relator, that the appointing power resides in the Governor. I find no conflict, but entire unanimity, for in every case that I have seen it is affirmed that, unless expressly prohibited by constitutional provisions, there is a class of offices which the Legislature may create, and fill by appointment. In a very recent case, that of *Biggs* v. *McBride*, 21 Pacific Rep. 878, the Supreme Court of Oregon had before it the same question which faces us, and the court said: " Now, if it could be

shown that the power to oppoint all officers which are not
expressly made elective by the people, is a part of the ' chief
executive power of the State,' the appellant's contention
would be sustained; but no authority whatever has been
cited to sustain this view, nor is it believed any exists; on
the contrary, the provisions of the fifth article of the Consti-
tution, which .relates to the executive department, all seem
at variance with this view. The framers of this instrument
evidently designed that no prerogative power should be left
lurking in any of its provisions. No doubt they remem-
bered something of the history of the conflicts of the pre-
rogative in that country from which we inherited the com-
mon law." The same question was before the Supreme
Court of California within the last three months, and it was
said by the court, in speaking of the views of Jefferson, that,
" No doubt these views as to the intrinsic nature of the power
of appointment, or of nomination, to office, and the expedi-
ency of confining it to the executive department of the gov-
ernment, are entitled to the highest consideration; but the
question here is not what the Constitution ought to be, but
what it is; or, in other words, what was the intention of its
framers as to this particular matter. Of course, if there had
been, at the time of its adoption, a general consensus of
opinion in harmony with the views of Mr. Jefferson, we
should be forced to conclude that its framers intended to
forbid to the Legislature the exercise of the power of ap-
pointment to office. But there was· no such consensus of
opinion. On the contrary, it had not only been decided in
other States of the Union, under constitutions containing
provisions substantially equivalent to the sections above
quoted from our own, that the Legislature could fill offices
by itself created; but our own Supreme Court, construing
provisions of our old Constitution, had come to the same
conclusion. *People* v. *Langdon,* 8 Cal. 1."

In the case of *People* v. *Hurlbut,* 24 Mich. 44, it was urged
that the Legislature had no appointing power, and in con-

sidering this argument it was said : " This view of the nature of legislative power, as urged by the counsel for the respondents, struck me at first with considerable force ; but reflection and further examination have satisfied me that, . though true as to the great mass of legislative power—that which is most broadly distinguished from both judicial and executive—yet it does not include the whole field of what is generally recognized as legislative power, not only in England, but in most of the States of the Union. Besides the power to make general rules for the government of officers and persons, and regulating the rights of classes of persons, or of the whole community, there is a large class of powers recognized as legislative, occupying an intermediate space between these general rules and regulations, and those of a judicial character on the one side, and executive on the other, and which are not, and can not be, marked off from these by any clear and palpable line." In 1839 the Supreme Court of Illinois discussed and decided the question which we are considering. In the course of the opinion of the court, WILSON, C. J., said : " The next grant of power relied on is, that ' The executive power of the State shall be vested in a Governor.' This clause is treated by the court below as conferring numerous and ample powers upon the Governor. All that are usually denominated executive powers, by theoretical writers, are supposed to be included in this grant to the Governor, except such as are expressly conferred upon other departments. This, I think, I shall be able to show is a mistaken view of the subject." *Field* v. *People,* 2 Scam. 79.

In *State, ex rel.,* v. *Irwin,* 5 Nev. 111, the court said, perhaps rather too strongly, that, " In the Constitution of the State of Nevada, the appointing power of the Legislature is neither cut up by the roots, nor in any manner hampered, save where the Constitution itself, or the Federal Constitution, provides for filling a vacancy. The former prescribes the mode of filling vacancies only as to State officers and members of the Leg-

islature; the latter, as to United States senators and representatives in Congress. In every other case the power is in the Legislature, to be by it regulated by law, as is evident from the fact that no provision is made save as to vacancies." This doctrine, broad as it is, the same court approved in a later case, *State, ex rel.,* v. *Swift,* 11 Nev. 128. Perhaps the principle has never been more clearly stated than by the great constitutional lawyer whose statements, as Emerson says," lay in daylight." That lawyer said: " The inferences which, I think, follow from these views of the subject, are two: first, that the denomination of a department does not fix the limits of the powers conferred on it, nor even their exact nature; and, second (which, indeed, follows from the first), that in our American governments, the chief executive magistrate does not necessarily, and by force of his general character of supreme executive, possess the appointing power. He may have it, or he may not, according to the particular provisions applicable to each case in the respective constitutions." Webster's speech on the Presidential Protest. But I can not, without unduly prolonging this opinion, make further quotations; and I must therefore refer, without comment, to some of the many decisions which, as I interpret them, support my conclusion: *Mayor, etc.,* v. *State, ex rel.,* 15 Md. 376; *State, ex rel.,* v. *Lusk,* 18 Mo. 333; *Bridges* v. *Shallcross,* 6 W. Va. 562; *Kilbourn* v. *Thompson,* 103 U. S. 168; *Walker* v. *City of Cincinnati,* 21 Ohio St. 14; *State, ex rel.,* v. *Harmon,* 31 Ohio St. 250; *Com., ex rel.,* v. *Baxter,* 35 Pa. St. 263; *Baker* v. *Kirk,* 33 Ind. 517; *State, ex rel.,* v. *Harrison,* 113 Ind. 434; *Hovey* v. *State, ex rel. Carson,* 119 Ind. 395; *Hovey* v. *State, ex rel. Riley,* 119 Ind. 386.

The conclusion deducible from these authorities is, so far as it is here necessary to ascertain it, that where the Legislature has power to establish a scientific department, or to establish any public institution, it has, as an incident of that power, the right to select the means and agencies it deems necessary to carry into effect the law it has enacted.

The case of *State, ex rel.,* v. *Kennon,* 7 Ohio, 546, is not in point, for the reason that the Constitution of Ohio, wisely as I think, forbids the Legislature from appointing any officers. The cases which I have cited from other States are all founded on Constitutions similar to ours; some of them, indeed, are based on Constitutions in words the same as our own. If the question were one dependent upon authority alone it would be my duty, as a judge, to yield to the law as it has long existed, however much my inclination as a citizen may oppose; but the conclusion established by authority is the only one which, in my judgment, can be vindicated on principle. No other can be reached save by trampling upon long settled and well known principles. With much more of brevity than the importance of the question merits, I shall refer to some of the principles which control my judgment.

If the power to appoint is exclusively executive, the provisions of our Constitution expressly designating the cases in which the Governor may appoint are meaningless; but the words of an instrument of such a solemn and high nature as that of the organic law of a sovereign State can not be disregarded. Courts have no right to treat them as dead and unmeaning; on the contrary, each word is to be deemed one of life and strength. Giving force to the various provisions of the Constitution, which designate the cases in which the Governor may appoint to office, it must be held that he can appoint in no others, for it is a rudimental principle that the express mention of one thing implies the exclusion of all others.

It can not be held that words were vainly placed in such an instrument as the Constitution of a State, for that principle and authority sternly forbid; nor can it be held that words written in such an instrument are fruitless.

If the Governor possesses the power of appointment, as an inherent and exclusive attribute of executive power, then the many provisions designating the cases in which he may appoint, for there are many of them, are vain and fruitless;

since, if the power is an inherent executive element, these provisions are utterly meaningless. If it be true that the vesting of the executive power of itself carried the right to appoint to office, then there are many provisions in our Constitution to which no force can be ascribed. Word after word, and clause after clause, must be treated as mere waste matter, if the power to appoint is inherently and exclusively executive. In written constitutions there are no meaningless words.

I do not believe that the power to appoint to office is essentially legislative, but I do believe that the people, who are absolutely and inherently sovereign rulers, may make it legislative. I believe that, to a limited extent, they have done so. Section 18, of article 5, does so by the clearest implication. It declares that " When, during a recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly ; or when, at any time, a vacancy shall have occurred in any other State office, or in the office of judge of any court, the Governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified." This provision can not mean strictly legislative offices ; that is, such offices as are directly and immediately connected with legislative action, for the Legislature has an inherent right, by virtue of its departmental sovereignty, to appoint such officers, and the predominant principle which separates the departments of government precludes the executive from appointing a purely legislative officer. There is, however, a plainer provision of the Constitution, and that provision is this: " All officers, whose appointment is not otherwise provided for in this Constitution, shall be chosen in such manner as now is, or may hereafter be, prescribed by law." This confers some power and a broad discretion—neither an unlimited power nor an unfettered discretion, to be sure— upon the General Assembly, and it is within the power and the discretion of that body to enact such a law as will authorize

it to itself appoint a class of officers, or invest another department with that authority.   If, in other words, that body can, as the Constitution ordains it may, provide by law for the appointment of a class of officers, it may enact a law providing that it may itself appoint.   This, it seems to me, must be so, for the reason that no limit is placed upon that body as to the means it shall select, but all is confided to its discretion in cases where it may enact a law establishing a scientific bureau, or department.

The question, as I conceive, is not what, in the abstract, is a legislative or an executive power, but what does our Constitution ordain shall be a legislative power.   What the people, in constitutional convention assembled, declared a legislative power is such, for their decision is beyond review by any department of government.   That the Constitution does invest the General Assembly with some powers beyond that of enacting laws, and, therefore, with something more than purely, or abstract, legislative power, I, for my part, can not doubt.   One of the powers, neither abstractly nor purely legislative, thus conferred is that of appointing to office in a limited class of cases.   Our present Constitution intended to limit, and does materially limit, the power of the Legislature to appoint to office, but it does not entirely destroy it.

It is to be remembered that where delegated governmental authority is not expressly or impliedly lodged elsewhere it resides in the Legislature.   The Legislature, if the figure be not too bold, may be likened to a residuary legatee; what does not go elsewhere goes to it under the general delegation of power.   *Sharpless* v. *Mayor*, 21 Pa. St. 147, 161.   In a work of an elementary character, but, for all that, a very valuable one, Judge COOLEY says : " And whenever a power is not distinctly either legislative, executive, or judicial, and is not by the Constitution distinctly confided to a department of the government designated, the mode of its exercise, and the agency, must necessarily be determined by law ; in

other words, must necessarily be under the control of the Legislature." Principles of Const. Law, 44. " The authority that makes the laws," says this eminent author, in another work, " has a large discretion in determining the means through which they shall be executed ; and the performance of many duties which they may provide for by law they may refer either to the chief executive of the State, or, at their option, to any other executive or ministerial officer, or even to a person specially named for the duty. What can be definitely said on the subject is this : That such powers as are specially conferred by the Constitution upon the Governor, or upon any other specified officer, the Legislature can not require or authorize to be performed by any other officer or authority ; and from those duties which the Constitution requires of him he can not be excused by law. But other powers or duties the executive can not exercise or assume except by legislative authority, and the power which in its discretion it confers it may also in its discretion withhold, or confide to other hands." Const. Lim. (5th ed.), 136.

The application of this principle is not difficult. For example : The Legislature has power to establish a scientific department, or an agricultural department, and having this power it may select its own means and instruments ; that is, appoint the officers who are to take charge of the department created. I can not, for the reasons I have outlined, assent to the conclusion that the act under consideration is void because it assumes to invest the Legislature with authority to appoint to office.

I have no doubt that the act does violate section 19 of article 4 of the Constitution. That section reads thus : " Every act shall embrace but one subject and matters properly connected therewith ; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

The act assumes to assemble in one group offices of a radically different character, some of them offices under the police department, others offices in a department of a purely scientific nature. The department of geology is, in itself, a complete subject, and the provisions of the act relative to coal oil inspectors and mine inspector relate to different subjects. The inspection of mines is a subject of itself, and so is the inspection of coal oil, and regulations on these subjects, since they necessarily interfere with private rights, can only be sustained under the police power of the State, while the establishment of a scientific bureau, or department, is a subject of an essentially different nature. Subjects so diverse can not be embodied in one act, since to permit this would be to permit the evil which the provision of the Constitution quoted was designed to destroy. *Indiana, etc., R. W. Co.* v. *Potts,* 7 Ind. 681 ; *Grubbs* v. *State,* 24 Ind. 295 ; *State, ex rel.,* v. *Tucker,* 46 Ind. 355 (360) ; *Johnston* v. *Spicer,* 107 N. Y. 185 (202) ; *Leach* v. *People,* 122 Ill. 420 ; *Cutlip* v. *Sheriff,* 3 W. Va. 588 ; *Davis* v. *State,* 7 Md. 151 ; *State* v. *Harrison,* 11 La. Ann. 722 ; *State* v. *Heywood,* 38 La. Ann. 689 ; *People* v. *Mahaney,* 13 Mich. 481 (490) ; *Ballentyne* v. *Wickersham,* 75 Ala. 533 (539) ; *Payne* v. *Mahon,* 41 N. J. L. 292 ; *Skinner* v. *Wilhelm,* 63 Mich. 568 ; *People* v. *Beadle,* 60 Mich. 22 ; *Murphy* v. *State,* 9 Lea, 373 ; *Ragio* v. *State,* 86 Tenn. 272 ; *State* v. *McCann,* 4 Lea, 1 ; *City of San Antonio* v. *Gould,* 34 Texas, 49.

The act plainly betrays its own weakness, for it declares that it covers four divisions, and of these, three, at least, are complete and distinct subjects, each requiring and receiving different treatment. Names go for but little, and naming the subjects divisions does not make them mere parts of one general subject. Whether they are each subjects, or all mere parts of one subject, is to be determined from their essential elements, for the Legislature can not, by any mere

The State, *ex rel.* Yancey *v.* Hyde.

form of words, change the nature of a thing, and by that course evade the Constitution.

Filed Nov. 7, 1889.

## DISSENTING OPINION.

MITCHELL, J.—The conclusions reached in the opinion by ELLIOTT, C. J., meet my cordial approval. Nothing can be said by me which would add force to his clear and well sustained argument.

Even if it were conceded that the Legislature had no power to elect the state geologist and the statistician, it is impossible to maintain the conclusion that a vacancy occurred in those offices, or that they were vacant at the time the Governor assumed the right to appoint their successors. The present incumbents were both legally appointed, and were holding their offices under legal appointments when they were elected by the last Legislature, and if it were conceded that this last election was utterly void, then under all the authorities the incumbents would continue to hold under that provision of the Constitution which declares that officers shall continue to hold until their successors shall have been legally elected and qualified. This provision of the Constitution has been utterly disregarded. With an abiding conviction that the reasoning employed, and the conclusions reached in the opinion of the court on all the vital questions involved, are radically unsound and in open conflict with all the previous decisions of this court, and with the practical exposition which the Constitution has received since the first organization of the State government, and that they are also in direct antagonism with the decisions of the courts in every other State where like questions have been considered, I can only record an earnest and emphatic dissent from the judgment on the principal questions, and an unqualified concurrence in the opinion of the Chief Justice.

Filed Nov. 7, 1889.