CALHOUN et al. v. CITY OF SEATTLE et al.

(District Court, W. D. Washington, N. D. June 18, 1914.)

No. 1932.

COURTS (§ 101*)—FEDERAL COURT—ENFORCEMENT OF STATUTES—"STATUTE"— "ORDINANCES"—"LEGISLATURE."

Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911, p. 236]) § 266, provides that no interlocutory injunction restraining the enforcement of any state statute shall be issued by any justice of the Supreme Court or any District Court of the United States, or by any judge thereof, or circuit judge acting as a District Court, for unconstitutionality, unless the application shall be presented to a justice of the Supreme Court of the United States or to a court or district judge, and shall be determined by three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the other two either circuit or district judges, and unless a majority of the three shall concur in granting the application. Held, that the word "statute" meant the express written will of the Legislature, rendered authentic by certain described forms and solemnities, the word "Legislature" being synonymous with General Assembly of the state, and did not include city ordinances, which are laws passed by the governing body of a municipal corporation; and a federal District Court, presided over by a single judge, had jurisdiction to restrain the enforcement of city ordinances attempting to repeal the franchises of a railroad company, under a bill alleging that such repealing ordinances were violative of the railroad company's contract

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rights under the federal Constitution citing 7 Words and Phrases, pp. 6647, 6648.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 344–350, 629; Dec. Dig. § 101.*

For other definitions, see Words and Phrases, vol. 6, pp. 5024–5027; vol. 5, pp. 4089, 4090.]

In Equity. Suit by Scott Calhoun and another, as receivers of the Seattle, Renton & Southern Railway Company, against the City of Seattle and another. On objection of complainant to the jurisdiction of the District Court to hear and determine the issue, unless determined by three judges under Judicial Code, § 266. Overruled.

Harold Preston, Will H. Thompson, and Morris B. Sachs, all of Seattle, Wash., for complainant.

James E. Bradford and Ralph S. Pierce, both of Seattle, Wash., for defendants.

NETERER, District Judge. On the 23d day of December, 1910, Judge Hanford issued a temporary restraining order against the city of Seattle, a municipal corporation of the first class, the mayor of the city, the city comptroller, and members of the city council of the city of Seattle, their servants, agents, and employés, from in any way or manner interfering with, hindering, or impairing the operation of the lines of railways now owned and operated by the complainant railway company, upon a bill in equity filed on the same day, and directed the defendant to appear on the 29th day of December thereafter, and show cause, if any, why an injunction should not be issued as prayed for in the bill of the complainant. On the 6th day of January, 1911, a temporary injunction was issued by Judge Donworth, enjoining the defendants, their servants, agents, and employés, from doing any act or thing, or taking any further proceedings, under Ordinances No. 25,963 and No. 25,962 of the city of Seattle, until the final hearing of this cause, and until the further order of this court.

From the bill of complaint and supplemental bill it appears: That complainant is the owner of a line of street railways in Seattle, maintained and operated by virtue of two franchise ordinances, being Ordinance No. 15,919, and Ordinance No. 20,088. These ordinances were duly accepted by complainant, or its predecessors in interest, and constitute the contractual rights between the parties to this action. That the city council, in December, 1910, passed two resolutions, declaring its intention to repeal these ordinances, and directing the service of written notice upon complainant of hearing before the city council, on December 19, 1910, and to show cause, if any, against such repeal. That at the time fixed complainant appeared and objected to the proposed action. That the mayor and city council, after receiving certain evidence claimed by the city to be sufficient, over the objection of the complainant, passed two ordinances, numbered respectively 25,962 and 25,963, repealing the two franchise ordinances first mentioned. That the complainant and its predecessors in interest had duly complied with all the terms and conditions of these franchise ordi-

nances, and that no cause for repeal existed. It was further averred that the two repealing ordinances impaired the obligation of contracts created by the franchise ordinances, and, if permitted to stand as valid ordinances, will deprive the complainant of its property in the franchise ordinances and the street railways without due process of law. Other allegations are made from which it appears that the action of the city as set forth will result in irrevocable injury to the complainant.

A demurrer was afterwards filed to this bill by the defendant, challenging the jurisdiction of the court. Judge Donworth, in deciding this demurrer, held that:

"The prohibition of the Constitution against laws impairing the obligation of contracts, applies to all contracts, executed or executory, whoever may be parties to them"

—and treated the ordinances as legislation enacted by virtue of the lawmaking power of the state, and within the "contract" or "due process" clauses of the Constitution of the United States, and decided that the federal court had jurisdiction.

On the 10th of June, 1914, a motion for an order modifying the injunction was filed by the defendants, and the same duly noted for hearing before the court on the 15th day of June. At this hearing the complainant appeared and objected to the jurisdiction of the District Court, unless composed of three judges, to hear and determine the issue, by reason of the limited power granted, and prohibitory provisions of section 266 of the Judicial Code, which provides:

"No interlocutory injunction, suspending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute shall be issued, or granted, by any justice of the Supreme Court, or by any District Court of the United States, or by any judge thereof, or by any circuit judge acting as District Court, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court, or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. * * * Said application shall not be heard or determined before at least five days notice of the hearing has been given to the Governor and to the Attorney General of the state, and to such other persons as may be defendants in the suit."

It is contended that the effect of this action is to enjoin the operation of a city ordinance, and that in legal contemplation and within the comprehension of this section it has the same dignity and status as a state statute, and to sustain this contention the decision of Judge Donworth in deciding the question of jurisdiction in this case when it was attacked by demurrer, and the cases of Iron Mountain Road Co. of Memphis v. City of Memphis, 96 Fed. 113, 37 C. C. A. 410, and Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, are cited. An examination of these cases discloses the fact that these were cases where the rights became vested under the provisions of city ordinances, and the only question passed upon by the court was the question of jurisdiction. In these cases the

cities, by the repealing ordinances, sought to impair the obligation of their contracts created by the ordinances, and the court simply held that where a contract is made by the state, or one of the agencies of the state, by virtue of power for that purpose conferred by the Legislature of the state, the federal court will assume jurisdiction, construe such statute or ordinance, and interpret the same.

The case of Atlantic Coast Line Railroad Co. v. City of Goldsboro, North Carolina, 232 U. S. 548, 34 Sup. Ct. 364, 58 L. Ed. 721, decided February 24, 1914, is referred to with great confidence. In that case the Supreme Court uses the following language:

"Any enactment, from whatever source originating, to which a state gives the force of law, is a statute of the state, within the meaning of the pertinent clause of section 709, R. S. (U. S. Comp. St. 1901, p. 575), or Judicial Code, section 237, which confers jurisdiction upon this court."

And further:

"We must therefore treat the ordinances as legislation enacted by virtue of the lawmaking power of the state. They are manifestly an exertion of the police power, and the question is whether, viewed in that light, they run counter to the 'contract' or 'due process' clauses."

The language just quoted, used by the Supreme Court, was employed in determining the right of appeal from a state court to the Supreme Court of the United States, under the provisions of section 237, which provides that:

"A final judgment or decree in any suit in the highest court of a state in which a decision in the suit could be had, * * * where is drawn in question the validity of a statute * * * or an authority exercised under any state, on the ground of their being repugnant to the Constitution, * * * or laws of the United States," etc.

Special reference was made by the Supreme Court, in the case of Atlantic Coast, etc., v. Goldsboro, supra, to this section, bringing it within the phraseology and purposes for which the section was designed. There is no question but that the language employed is peculiarly applicable to this section, and it as clearly appears to be foreign to section 266. The language, "Where is drawn in question the validity of the statute *or the authority exercised under any statute,* the passing of the municipal by-law or ordinance, enacted by virtue of power for that purpose dedicated by the Legislature of the state," comes within the meaning of the pertinent clause of section 237 of the Judicial Code, clearly distinguishing it from the provisions of section 266, which pertains to *extraordinary remedies* under *unusual conditions.* Section 266 pertains explicitly and exclusively to *"any statute of the state,"* without any qualifying phrase, or any act delegated by this statute, or authority exercised under it.

The word "statute" has a definite and well-understood meaning. It is the "expressed written will of the Legislature, rendered authentic by certain prescribed forms and solemnities." Words and Phrases, vol. 7, page 6648.

The term "Legislature" is synonymous with General Assembly. State v. Gear, 5 Ohio Dec. 569. A "Legislature" is the body of persons in the state, clothed with authority to make laws. State v. Hyde,

121 Ind. 20, 22 N. E. 644. The lawmaking power is frequently termed, in common parlance, the "Legislature"; and once, if not more, such term is used in the Constitution to designate that body. State Treasurer v. Weeks, 4 Vt. 215. The "Legislature" is the lawmaking body of the state. Article 2, Constitution of Washington.

"Ordinances," as defined in Horr & B. Mun. Ord. 1, are laws passed by the governing body of a municipal corporation for the regulation of the affairs of the corporation. The term "ordinance" is now the usual denomination of such acts, though in England and in some of the states the technically more correct term of "by-law" or "bye-law" is in common or more approved use. Bills v. City of Goshen, 117 Ind. 221, 20 N. E. 115, 117, 3 L. R. A. 261.

Laws enacted by Congress and by state Legislature are invariably designated as *statutes,* and the legislative enactments of municipal corporations are almost as uniformly designated *ordinances.* There is every reason to conclude, from whatever viewpoint approached, in the consideration of section 266, that Congress did not intend the elastic construction to be placed upon the word "statute," or that "the authority exercised under any statute," used in section 237, should be implied. The passing of the ordinance in question was an act authorized by statute and the Constitution; but this fact does not enlarge the scope of section 266, in the face of the restrictive terms used and the purpose sought to be accomplished.

The plaintiff, with some force, suggests that the construction of section 17 of the Act of June 18, 1910 (chapter 309, 36 Stat. 539), creating the Commerce Court, reported at 220 U. S. 539, 31 Sup. Ct. 600, 55 L. Ed. 575, Ex parte Metropolitan Water Co., is decisive of the question here presented. That case involved a *statute* enacted by the state of Kansas, authorizing a summary appropriation of land, and Judge McPherson, in deciding the case, without calling in the judges as provided by section 17, stated:

"That these proceedings are for the purpose by injunction of restraining the enforcement of the state statute I have no doubt. It is alleged that such state statute is absolutely void, as being in conflict with both the state and national Constitutions. The prayers are in effect that the statute be decreed void. Neither have I any doubt that the action is to restrain the action of an officer of the state of Kansas, namely, the Governor. This is so because the state statute in question provides that when the Governor issues his proclamation, which he has done, he shall at once take possession of the property, either in person, or he may designate the officers of the drainage board to take such possession for him and in his name, but such officers of the drainage board to act as agents for the Governor. Therefore I am of the opinion that the congressional statute is directly involved, and the question remains: Shall this court now halt these proceedings, or shall other judges be called in to take control of the cases."

And he ruled that the provision of the section merely deprived a single judge of the power to grant a temporary injunction, and the court might be held by one judge, for the purpose of decreeing that the statute might be constitutional, and refused to enjoin its enforcement, and the Supreme Court held that, the statute being of the nature stated, the provisions of the act of Congress which are relied upon apply to the case, and that as a result of their application it imperatively

appears that the hearing and determination of the request for a temporary injunction should have been had before a court consisting of three judges, constituted in the mode specified in the statute. Manifestly this case does not aid in the solution of the problem in the instant case.

To construe this act, courts must consider, not only the language employed, but the evil sought to be remedied. Instances where courts had suspended the operation of legislative enactments, or orders of state commissions, substituting the judgment of one. district judge for the combined wisdom of the legislative body of the entire state, were some of the inducing causes which operated to move Congress. There was no demand nor reason for legislation guarding against suspension of city ordinances. The reasons are obvious that Congress intended the word "statute" to have its restricted definition, rather than a comprehensive definition embraced by the laws enacted under state authority. Courts will take judicial notice that there are many municipal corporations in a judicial district. Under the laws of the state of Washington, there are four different classes of municipalities. If the District Court, composed of a single judge, is without jurisdiction to hear and determine the matter in issue here, then the same disability would exist if the ordinances of any of the municipalities in the circuit should be involved in like manner.

And it is not at all reasonable to presume that Congress, in passing section 266, contemplated to charge the courts with the extensive additional burden that might arise by reason of controversies involving the constitutionality of ordinances or rules of cities and towns, many of little importance, and yet so numerous that it would be difficult, if not impossible, to have them heard under section 266, and by reason of delay occasioned thereby rights would be sacrificed and the business of the district so interrupted as to cause great inconvenience to many litigants. Clearly, giving a city "ordinance" the dignity of a "statute" can only be considered with relation to the "contract" and "due process" clauses of the Constitution of the United States, and not within the provisions of section 266.

The issue here presented has been decided by Judge Hanford, formerly judge of this district, in the case of Seattle Electric Co. v. City of Seattle et al., not published, and by Circuit Judge Dennison and District Judges McCall and Sanford of the Sixth Circuit, in Cumberland Telephone & Telegraph Co. v. Memphis (D. C.) 198 Fed. 955, in which the court, after citing Sperry & Hutchinson Co. v. City of Tacoma (also of this district) 190 Fed. 682, said:

"Considering the entire section together, and what is known as to the reason for its enactment, the majority of the court, as now constituted, considers that this section does not govern the present case. They think that the natural meaning of 'statute of a state' is a statute or law directly passed by the Legislature of the state, and the natural meaning of 'any officer of such state' is an officer whose authority extends throughout the state, and is not limited to a small district; and they believe that Congress used these phrases with this natural meaning, rather than the broader and less obvious meaning which trained lawyers might find therein. This conclusion is fortified by the requirement that notice must be given to the Governor and the Attorney General, as being real representative parties in interest. It is true that the en-

tire state, and, through the state, the Governor and the Attorney General, are interested in the validity of every municipal ordinance; but this interest is indirect and remote, and, it is thought probably was not in the congressional mind."

· A consideration of the entire section, and the expression of the courts before whom this matter has been presented, leads me to believe that this court has jurisdiction to determine the issues involved.