CHICAGO, B. & Q. R. CO. v. OGLESBY et al.

(District Court, W. D. Missouri, W. D. July 20, 1912.)

No. 3,884.

1. COURTS (§ 102*)—FEDERAL COURTS—STATUTORY REGULATION—APPLICABILITY.

A suit by a railroad company challenging the validity of an order of the Railroad Commission of Missouri, but not questioning the constitutionality of the statute authorizing the commission to make orders, and declaring, in Rev. St. Mo. 1909, § 3281, that orders shall be in force until overruled or modified on final hearing, is not within Act Cong. June 18, 1910, c. 309, § 17, 36 Stat. 557, prohibiting an interlocutory injunction restraining the execution of any statute on the ground of its unconstitutionality, unless the application shall be heard and determined by three judges and a majority concur in granting the application, but a federal court of equity acquires jurisdiction on the ground that constitutional guaranties are violated through a wrongful administration of the statute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 351, 352; Dec. Dig. § 102.*

Jurisdiction of federal courts in actions involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. Consol. Copper & Silver Mining Co., 35 C. C. A. 7; Earnhart v. Switzler, 105 C. C. A. 262.]

2. COURTS (§ 307*)—FEDERAL COURTS—JURISDICTION.

Where a citizen of a state may go into a court of the state to defend his property against illegal acts of its officers, a citizen of another state may invoke jurisdiction of the federal courts for the same relief, and, when the jurisdiction of a federal court attaches, it is governed by its own rules of procedure.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850-854; Dec. Dig. § 307.*]

3. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—DIVERSITY OF CITIZENSHIP.

A federal court of equity may grant relief where a valid state law is wrongfully administered by officers of the state so as to make the administration an illegal burden on individuals, provided the necessary diversity of citizenship exists.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820-824; Dec. Dig. § 282.*

Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

4. COMMERCE (§ 62*)—REGULATION—INTERFERENCE WITH INTERSTATE COMMERCE—RAILROADS.

An order of a State Railroad Commission which requires a railroad company operating a road continuously into an adjoining state to operate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

each way daily a passenger train, in addition to the trains in operation, between the state line to a point in the state, does not interfere with interstate commerce, though the enforcement of the order may require the establishment of new terminal facilities.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 81; Dec. Dig. § 62.*]

5. RAILROADS (§ 109*)—REGULATIONS—REASONABLENESS.

The mere fact that the income from the expenditure at a particular point on a railroad may not earn a fair return on the capital invested at that point is not conclusive in determining the reasonableness of an order of a Railroad Commission requiring the improvement at such point.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 337, 338; Dec. Dig. § 109.*]

6. RAILROADS (§ 9*)—REGULATIONS—INVALIDITY—PLEADING.

A bill by a railroad company challenging the validity of an order of a State Railroad Commission, requiring the operation each way daily of a passenger train between designated points, in addition to trains in operation, which alleges that the enforcement of the order will compel greater facilities than is customarily given under similar conditions, that the passenger facilities sought to be enforced are not demanded by the reasonable necessities of the traffic affected, that the enforcement of the order will inflict on the company an unnecessary loss, and thereby take the company's property without due process of law, and deprive it of the equal protection of the laws, prima facie states the illegality of the order; and, where the expenses incurred in the operation of the train and required in the establishment of additional terminal facilities will inflict an irreparable loss and the company will be vexed by a multiplicity of suits for penalties imposed for violation of the order, equity has jurisdiction, and will grant a temporary injunction.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 12–19; Dec. Dig. § 9.*]

In Equity. Suit by the Chicago, Burlington & Quincy Railroad Company against H. R. Oglesby and others. Temporary injunction granted.

O. M. Spencer and M. G. Roberts, both of St. Joseph, Mo., for complainant.

Elliott W. Majors, Atty. Gen., and Campbell Cummings, Asst. Atty. Gen., for defendants.

VAN VALKENBURGH, District Judge. The defendants in this case are, respectively, the members of the Board of Railroad and Warehouse Commissioners of the state of Missouri, the Attorney General of the state, and the prosecuting attorneys of Linn, Sullivan, and Putnam counties. The case arises because of an order of said Railroad and Warehouse Commissioners requiring the complainant on and after the 1st day of May, 1912, "to operate each way daily a passenger train in addition to the trains now in operation between the Iowa-Missouri state line near Mendota, Missouri, and Brookfield, Missouri," and through it complainant seeks to restrain the defendants from enforcing said order. The grounds for the relief sought are thus stated in the bill:

"(I) That the enforcement of said order requiring an additional passenger train daily each way on said local branch line, thus sought to be

enforced, would give greater facilities on the said local branch line than is customarily given under similar conditions by other railroads either in Missouri or in other. states of the Union.

"(2) That the passenger facilities thus sought to be enforced on the said local branch railway are not justifiable or demanded by the reasonable necessities and conditions of the traffic affected thereby, and that the existing facilities for passenger traffic on the said local branch railroad within the state of Missouri are adequate, fair, and reasonable.

"(3) That without any justifiable necessity the enforcement of the said order will inflict and impose on the complainant a loss on said local branch railway within the state of Missouri and from Laclede to the state · line in revenue amounting to over $30,000 per year (which the complainant is entitled to have and needs), in addition to the present annual deficit of $65,000 on all passenger traffic carried on said branch line within the state of Missouri as aforesaid, and that there has been no change in the volume of traffic on the said branch railroad that would in any sense warrant said order of said Commissioners for any additional train in each or either direction.

"(4) That, if your orator were compelled to comply with said order of the Railroad Commissioners, it would result in great loss and irreparable injury to your orator, for which it has no remedy at law, and would be in effect the taking of the property of your orator to an extent greatly in excess of $30,000 per annum without due process of law, and without adequate compensation, contrary to and in violation of section 1 of article 14 of the amendment of the Constitution of the United States, and will deprive your complainant of equal protection under the laws as guaranteed to it by the Constitution of the United States.

"(5) That the enforcement of the said order of the Railroad Commissioners is a violation of those clauses of the Constitution of the United States in relation to commerce among the states, and that it is an attempt to place a substantial and direct burden upon transportation on the said branch line of railroad between the states of Missouri and Iowa, and compel your orator to run said proposed passenger train to the terminal facilities at Centerville, Iowa, or to expend large sums of money, to wit, over $100,000 in unnecessarily building, erecting and maintaining terminal facilities at the state line between Missouri and Iowa."

A temporary restraining order was issued April 20, 1912, and at the hearing on May 11, 1912, complainant's application for a temporary injunction was opposed upon the following grounds:

(1) That the nature of the case presented requires the sitting of three judges to determine the application.

(2) The interstate commerce clause is not violated by the order.

(3) The cost of the proposed improvement ordered by the Commission is not controlling in determining the reasonableness of the order.

(4) That the orders of the Commission are prima facie, reasonable, and just, and, if in any way subject to the control of the courts, should not be interfered with unless manifestly abused, to the substantial injury of the complainant, and that the allegations of the bill are wholly insufficient.

[1] Section 17, Act June 18, 1910, c. 309, 36 Stat. pt. 1, p. 557, provides:

"That no interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute shall be issued or granted by any justice of the Supreme Court, or by any Circuit Court of the United States, or by any judge thereof, or

by any district judge acting as circuit judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit judge, or to a district judge acting as circuit judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court of the United States or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application."

The purpose of this enactment is well known. It was intended to insure the concurrence of at least two of three judges, one of whom should be a justice of the Supreme Court, or a circuit judge, before a temporary injunction should issue suspending or restraining the enforcement of any statute of a state upon the ground of its unconstitutionality. Rate legislation in particular, and judicial construction of such legislation, was most prominently in the mind of the Congress. However, the law, by its terms, is not restricted to such; but manifestly the state statute, as a statute, was the subject-matter dealt with, and not the acts of state officers who are charged to have exceeded the powers conferred by a statute whose constitutionality is in nowise attacked. The bill in this case does not challenge the constitutionality of the act authorizing the Board of Railroad and Warehouse Commissioners to determine and fix the number, kind, and character of trains for the carrying of passengers, baggage, and express, to be operated upon railroads within this state, but other constitutional guaranties require that such powers must be exercised justly and reasonably, and, if not so exercised, then the law, though valid, is wrongfully administered by the officers of the state, who are, to that extent, acting without the authority of the law. From such unlawful acts the Constitution guarantees relief. This would be true in any event, but in the Missouri statute under consideration the right to grant such relief is expressly reserved to the courts.

Section 3281, Revised Statutes of Missouri 1909, provides:

"All orders of the Board of Railroad and Warehouse Commissioners when made in accordance with the powers conferred upon them by the laws of this state shall be in force and effect until overruled or modified on a final hearing by a court of competent jurisdiction."

[2] It will thus be seen that a remedy against unjust, unreasonable, or oppressive orders is expressly granted, and, whenever a citizen of a state can go into the courts of a state to defend his property against the illegal acts of its officers, a citizen of another state may invoke the jurisdiction of the federal courts to maintain a like defense. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362–391, 14 Sup. Ct. 1047, 38 L. Ed. 1014. When the jurisdiction of a federal court of equity attaches, it is governed by its own rules of procedure, and not by those prevailing in the state jurisdiction. It is clear, therefore, that the constitutionality of this statute is not in question; and therefore it is not required that three judges should sit to hear and determine the application for a temporary injunction.

[3] The jurisdiction of the courts of the United States does not depend upon the unconstitutionality of the state statute. A valid law

may be wrongfully administered by officers of the state so as to make such administration an illegal burden and exaction upon individuals. That a federal court of equity can grant relief under such circumstances when diversity of citizenship exists is well settled. Judson on Interstate Commerce (2d Ed.) p. 178, § 112; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362–390, 14 Sup. Ct. 1047, 38 L. Ed. 1014. There is nothing in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, which contravenes this rule.

[4] We must agree with the defendants that the interstate commerce clause of the federal Constitution is not violated by this order which affects only the intrastate part of the line regardless of terminal facilities. It is an elementary proposition that railroads from the public nature of the business by them carried on and the interest which the public have in their operation are subject, as to their state business, to state regulation. Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398. The primal duty of a carrier is to furnish adequate facilities to the public, and that duty may well be compelled, although by doing so, as an incident, some pecuniary loss from rendering such service may result. And even though the carrier may operate its railroad continuously into another state, and the enforcement of the order might require it to establish new terminal facilities at expense and inconvenience, nevertheless the order, if not otherwise unreasonable, is not thereby rendered invalid. Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, supra; Missouri Pacific Ry. Co. v. State of Kansas ex. rel., 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472.

[5] It is also true that the mere fact that the income from the expenditure at a particular point upon a railroad may not earn a fair return upon the capital invested at that point is not conclusive in determining the reasonableness of an order of the Railway Commission requiring such an improvement. Minneapolis & St. Louis R. R. Co. v. Minnesota, 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151; St. Louis & San Francisco Ry. Co. v. Gill, 156 U. S. 649, 15 Sup. Ct. 484, 39 L. Ed. 567; Missouri Pacific Ry. Co. v. State of Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472.

The difference between cases such as that at bar and those involving the establishment of maximum rates is succinctly stated by the Supreme Court in the following language:

"While the enforcement by a state of a general scheme of maximum rates so unreasonably low as to be unjust and unreasonable may be confiscation and amount to taking property without due process of law, the state has power to compel a railroad company to perform a particular and specified duty necessary for the convenience of the public, even though it may entail some pecuniary loss." Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, supra.

The limitation upon this power, however, is thus stated in the opinion:

"As the public power to regulate railways and the private right of ownership of such property coexist and do not the one destroy the other, it has

been settled that the right of ownership of railway property like other property rights finds protection in constitutional guaranties, and therefore, wherever the power of regulation is exerted in such an arbitrary and unreasonable way as to cause it to be in effect not a regulation, but an infringement upon the right of ownership, such an exertion of power is void because repugnant to the due process and equal protection clauses of the fourteenth amendment. The result, therefore, is that the proposition relied upon is well founded if it be that the order which the court below enforced was of the arbitrary and unreasonable character asserted. In coming to consider the question just stated, it must be borne in mind that a court may not, under the guise of protecting private property, extend its authority to a subject of regulation not within its competency, but is confined to ascertaining whether the particular assertion of the legislative power to regulate has been exercised to so unwarranted a degree as in substance and effect to exceed regulation, and be equivalent to a taking of property without due process of law, or a denial of the equal protection of the laws." Id., 206 U. S., at page 20, 27 Sup. Ct., at page 592 (51 L. Ed. 933, 11 Ann. Cas. 398).

[6] In this case the bill charges that the enforcement of this order would compel greater facilities on this local branch line than is customarily given under similar conditions by other railroads either in Missouri or other states of the Union; that the passenger facilities thus sought to be enforced are not justifiable or demanded by the reasonable necessities and conditions of the traffic affected thereby; that without any justifiable necessity, the enforcement of the said order will inflict and impose on the complainant, not only a loss on said local branch railway within the state, but also a general and unnecessary loss to complainant, thereby taking the property of the complainant without due process of law and depriving it of equal protection under the laws. If these charges can be sustained, then the order is unjust and unreasonable, and the complainant is entitled to relief. The loss upon the local branch is not pleaded as conclusive evidence that the order is unreasonable. But, as was said by the Supreme Court in Missouri Pacific Ry. Co. v. State of Kansas, supra:

"The fact that the furnishing of a necessary facility ordered may occasion an incidental pecuniary loss is an important criteria to be taken into view in determining the reasonableness of the order."

The allegations of the bill under recognized principles of equity pleading state a prima facie case, and are sufficient to support the introduction of testimony from which it may ultimately be determined whether this order is, in fact, invalid because unjust and unreasonable, or whether it is a legitimate exercise of the power conferred upon the state officials by statute. If the order is, in fact, unreasonable, then the expenditure incurred in the way of train operation with its alleged attendant loss, and in the establishment of additional terminal facilities, if such be necessary, would inflict upon the complainant a loss that would be irreparable and irrecoverable, and entirely disproportionate to the inconvenience that would result to the public from temporarily suspending the operation of that order. On the other hand, it is alleged, and sufficiently appears, that complainant would be vexed by a multiplicity of suits for the collection of penalties imposed, should it refuse to comply with the order while testing its validity.

Under such conditions, in accordance with established practice, a temporary injunction should be granted. The defendants will be assigned to answer the bill in due course under the rule. An order may be drawn in accordance with the views herein expressed.