# PORTO RICO AMERICAN TOBÁCCO COMPANY
*v.*
## JOSÉ E. BENEDICTO, Treasurer of Porto Rico.

---

San Juan, Equity, No. 1008.

### THREE JUDGES IN INJUNCTION CASES.

**Injunction—Three Judges.**

1. Section 266 of the Judicial Code was designed to check the practice by which one judge might ex parte supersede acts of the legislature as unconstitutional.

**State—Territory.**

2. Section 266 of the Judicial Code in terms applies to states; but, in different sections of the Judicial Code, state is used generally and may include territories.

**District Court—Federal Statutes.**

3. The district court has full jurisdiction to determine the constitutionality of all Federal statutes. A territory is a municipal or public corporation created by Congress.

**Federal Statute—Applicable in Porto Rico.**

4. It is practically impossible to secure the attendance of other Federal judges in Porto Rico, and also for the action of the Federal district judge elsewhere than in Porto Rico, and therefore the statute as to his calling in two other Federal judges is locally inapplicable.

Porto Rico American Tobacco Co. v. Benedicto.

State—Territory.

     5. While the word "state" as used in the laws sometimes includes territories, this is exceptional, and does not apply to Porto Rico.

Porto Rico—Unincorporated.

     6. The fact that recent decisions establish the principle that Porto Rico is not incorporated into the Union is not material as to the civil rights of the residents, except as to juries.

Opinion filed April 29, 1918.

*Mr. J. Henri Brown* for complainant.

*Mr. Howard L. Kern,* Attorney General, appearing specially for defendant.

HAMILTON, Judge, delivered the following opinion:

The suit at bar is one against the Treasurer of Porto Rico to restrain the collection of charges under an act of the local legislature approved March 11, 1915, designed, according to its title, "to protect Porto Ricans cigars from fraudulent misrepresentation by providing for adequate expert inspection, and the issue of stamps of guaranty covering the origin of tobacco used in the manufacture of such cigars intended for exportation, and for other purposes."

The contention is that this act is unconstitutional and furthermore contravenes the Act of March 2, 1917. The defendant appears specially, and moves that the application for injunction be heard by three judges under § 266 of the Judicial Code [36 Stat. at L. 1162, chap. 231, Comp. Stat. 1916, § 1243] which provides as follows: "No interlocutory injunction sus-

pending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute [or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such state], shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court, or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. Whenever such application as aforesaid is presented to a justice of the Supreme Court, or to a judge, he shall immediately call to his assistance to hear and determine the application two other judges: Provided, however, that one of such three judges shall be a justice of the Supreme Court or a circuit judge. . . ."

This comes from the law as to the Interstate Commerce Commission and the commerce court. 36 Stat. at L. 539, chap. 309.

This application is resisted by the complainant on the ground that the section in question is limited to a statute of a state, and that Porto Rico is not a state within its purview. This brings up a question of practice, but one which is of great importance as determining whether the judge of this court may

Porto Rico American Tobacco Co. v. Benedicto.

act alone or must have the assistance of judges on the continent in passing upon constitutional matters when they come up by injunction.

1. The principle upon which the law as to three judges is based is said to be well known and part of the judicial and political history of the country. "The legislation was intended to check and prevent a practice by which one judge, on ex parte hearings and affidavits, superseded acts of legislature and commissions indefinitely, on the ground that they were unconstitutional . . . and to prevent delays in the enforcement of certain statutes or orders of Commissions." Louisville & N. R. Co. v. Railroad Commission, 208 Fed. 35. The section provides for a special tribunal for such purposes. Lykins v. Chesapeake & O. R. Co. 126 C. C. A. 395, 209 Fed. 573. To the same effect is Chicago, B. & Q. R. Co. v. Oglesby, 198 Fed. 153. The question is, Does this principle apply to a territory like Porto Rico under the statutes creating that territory?

2. Here, as was remarked in Talbott v. Silver Bow County, 139 U. S. 438, 35 L. ed. 210, 18 Sup. Ct. Rep. 594, where a national bank act was involved, it might be said: "In this section no express reference is made to territories; states only are mentioned. Tested by the letter, the argument is short and clear." In that case, however, it is remarked that the principle involved must be consulted. "If the matter in respect to which such an intent was imputed were wholly of interest to the states, or designed purely for the exercise of powers within the states, then properly all general expressions in the statute might be limited to states, and the intent of Congress be supported and established by the character of the subject-matter of the legislation. The converse of this is true."

Porto Rico American Tobacco Co. v. Benedicto.

There is no question that in different sections of the Judicial Code the word "state" may be and sometimes has been interpreted broadly enough to cover "territories," and a solution of this question must be derived from a study of these instances; and if they be inconclusive as to the point at bar, then the decision must be reached upon consideration of the principle involved. The word in recent revenue legislation generally excludes Porto Rico Act September 8, 1916, §§ 204, 300; Act October 3, 1917.

Thus § 275 of the Judicial Code relating to jurors provides the same qualifications and exemptions for jurors as those provided for "the highest court of law of such state" where the court is held. In Crowley v. United States, 194 U. S. 461, 48 L. ed. 1075, 24 Sup. Ct. Rep. 731, it is held as to Porto Rico that the competency of grand jurors should be governed by the local statute of Porto Rico, and the same point was similarly decided in an Oklahoma territorial court in Finch v. United States, 1 Okla. 396, 33 Pac. 638. The Crowley Case was held to apply to Porto Rico because of the provision of § 34 of the Foraker Act, that this district court has jurisdiction "of all cases cognizant in the circuit courts of the United States, and shall proceed therein in the same manner as the circuit court." See page 467. The court remarks that "the question presented by the opposing views of the parties is not free from difficulty," and does not discuss how far state applies to territories. It merely holds that a local jury statute applies in this district court just as a local jury statute applies in a district court in a state. In that case this court is held not to have proceeded in the same manner as the circuit court, that is to say, following the local law. It was rather a

reasoning by analogy or necessities of the situation, than a direct decision as to the content of the word "state."

In the Talbott Case, Rev. Stat. § 5219, Comp. Stat. 1916, § 9784, provided that national bank shares could be included as personal property for the purposes of tax assessment "imposed by authority of the state within which the association is located." There it was held that Congress must have meant to give power to the territories to tax, inasmuch as the National Bank Act is made of general application to national banks in the territories as well as in the states. The national bank system being intended to be of general application, the incidents of taxation were held to apply generally.

Moreover, it is argued that there are several sections of the Judicial Code where the word "state" is used in the same sense which covers territories. Taking them in order, the removal of suits applies. This, however, is covered by the express terms of § 42 of the present Jones Act, as it was in the preceding Foraker Act. Section 35 of the Judicial Code similarly applies to records of proceedings in a state court to be used in a court of the United States; § 65, that a Federal receiver shall follow the valid laws of the state in which the property is situated; § 237, as to writs of error as to Federal questions in the highest court of a state; § 238, as to appeals from the district courts direct to the Supreme Court; and § 246, as to writs of error and appeals from the Supreme Court of Porto Rico. As to these, however, the argument is inconclusive, because Congress found it necessary in the two last cases expressly to amend the sections so as to include Porto Rico, and the others would seem to come fairly within that provision of § 42 of the Jones Act which provides "that the laws of the

United States relating to appeals, writs of error and certiorari, removal of causes, and other matters or proceedings as between the courts of the United States and the courts of the several states shall govern in such matters and proceedings as between the district court of the United States and the courts of Porto Rico." [39 Stat. at. L. 966, chap. 145, Comp. Stat. —, § 3803r.]

Whether, without this provision of the Jones Act and a similar provision of the Foraker Act, these different provisions of the Judicial Code would have applied in Porto Rico, need not be considered. Indeed the fact that Congress found it necessary to pass a section making some of them applicable would tend to show that they would not be applicable without this special § 42.

Section 256 of the Judicial Code provides that "the jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned shall be exclusive of the courts of the several states" [36 Stat. at L. 1160, chap. 231, Comp. Stat. 1916, § 1233], and then follows the charter, so to speak, of the Federal courts. Here again, however, the local judicial department is expressly vested by § 40 of the Jones Act in certain local courts, and the local legislature is expressly prohibited from interfering with the district court of the United States. The scheme of the judicial arrangement, therefore, as established by statute, is that the local courts and the Federal court are different, and a proper construction of this would require that their jurisdiction must be distinct, without having recourse to any argument drawn from the analogy of state courts and Federal courts.

3. The principle involved in this provision as to three judges

is that state statutes and their execution by commissions shall not be interfered with by Federal courts, because, while the Federal courts are superior, the statute and that court represent two sovereignties, and one should not interfere with the other except upon consideration by at least one judge, who should have final jurisdiction of the matter by appeal or otherwise. There was no intention of limiting the jurisdiction of the district court. It was already provided in § 265. of the Judicial Code that "the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Barring injunctions against proceedings in a state court, the district court had full power over all subjects mentioned in Judicial Code, § 256; and it is expressly provided that an appeal in constitutional questions may be taken directly from the district court to the Supreme Court of the United States without going through the circuit court of appeals, § 238. In other words, the two fundamental courts of the Federal system are the Federal court and the Supreme Court, the circuit court of appeals merely acting in place of the Supreme Court in certain specified cases relating especially to money value.

There is no question, therefore, that the constitutionality of a statute of the United States on the most important subjects may and must be passed upon in the first instance by this district court, and is not to be considered even by the circuit court of appeals. Such a statute may, in time of war and national crisis like the present, involve the very existence of the nation. Could it be the intention of Congress that this judge shall pass upon such a law of the United States and is

Porto Rico American Tobacco Co. v. Benedicto.

not to pass upon that of a territory, which is a "municipal or public corporation created by Congress and deriving all its powers from the source of its creation?" Treadway v. Schnauber, 1 Dak. 236, 46 N. W. 475; Church of Jesus Christ of L. D. S. v. United States, 136 U. S. 3, 34 L. ed. 478, 10 Sup. Ct. Rep. 792. Can the stream rise higher than its source? There has never been a contention that § 266 of the Judicial Code applies to the ordinance of a city, which is the creature of the state, although such ordinances frequently involve constitutional questions of great importance. Calhoun v. Seattle, 215 Fed. 226. It does not apply to a special act for a turnpike. Lykins v. Chesapeake & O. R. Co. 126 C. C. A. 395, 209 Fed. 573.

4. Furthermore, the Jones Act in § 9 provides "that the statutory laws of the United States not locally inapplicable . . . shall have the same force and effect in Porto Rico as in the United States." Is § 266 of the Judicial Code locally applicable in Porto Rico?

There is no question that the application for injunction herein contemplated, if presented to a district judge, must be presented to the district judge of the court where the case is pending. Unless there be ancillary proceedings, which at least do not exist in this case, the application for the hearing must be made in the Federal district court for Porto Rico. Whenever such application is presented it is provided that the judge shall immediately call to his assistance, to hear and determine the application, two other judges after at least five days' notice to the governor and attorney general of the state. The result, therefore, is that the judge of this court must call to his assistance either a justice of the Supreme Court or a judge of the

Porto Rico American Tobacco Co. v. Benedicto.

circuit court of appeals of the first circuit.   The hearing by
the three judges must, therefore, be either at San Juan or
within the first circuit, presumably at Boston.   It is well known
that the circuit court of appeals has doubts about its right to
sit in Porto Rico, on account of Porto Rico's being a territory,
and not a state, and its members have consistently but infor-
mally declined to sit here.   It may be taken that it is out of
the question to secure the attendance of a justice of the Supreme
Court in San Juan.   On the other hand, the district judge of
this court has no jurisdiction outside of his district, and the
practice heretofore is that he cannot properly sit as a member
of the circuit court of appeals at Boston.   It is true that there
has been no express adjudication of these points, but the prac-
tice is to the above effect, and there is no reason to suppose the
practice will soon be changed.   The result, therefore, is that
Mohammed cannot go to the mountain, and the mountain will
not come to Mohammed.   The practical result is that there can
be no session of three judges to hear injunctions as provided in
§ 266 of the Judicial Code, and if the contention of the defend-
ant is correct there can be no injunctions granted on constitu-
tional grounds bringing up the question of constitutionality
of statutes in Porto Rico.   This is not an argument from
inconvenience, but a construction of a provision of the Organic
Act as to applicability of a statute of the United States.

5. It is quite true that for some purposes the American
political division known as territory is sometimes included
under the word "state."   Chief Justice Marshall declared that
the District of Columbia as a distinct political society is a state
according to the definitions of writers on general law.   Hep-
burn v. Ellzey, 2 Cranch, 445, 452, 2 L. ed. 332, 335.   The

same decision was reached by the Supreme Court through Mr. Justice Bradley in Metropolitan R. Co. v. District of Columbia, 132 U. S. 1, 9, 33 L. ed. 231, 234, 10 Sup. Ct. Rep. 19. The term "state" is used in general jurisprudence and by writers on public law as denoting organized political society with an established government. This was applied to the District of Columbia in interpreting a treaty with France giving Frenchmen rights of property in the same manner as citizens in all the states of the Union. Geofroy v. Riggs, 133 U. S. 258, 33 L. ed. 642, 10 Sup. Ct. Rep. 295. Justice Field, however, says that the "article is not happily drawn; it leaves in doubt what is meant by states of the Union." Id. 268. In the Hepburn Case, Chief Justice Marshall held that an act giving jurisdiction to circuit courts in cases between citizens of different states does not cover the District of Columbia in that "the act of Congress obviously uses the word 'state' in reference to that term as used in the Constitution . . . the members of the American confederacy only are the states contemplated in the Constitution . . . the word 'state' is used in the Constitution as designating a member of the Union, and excludes from the term the signification attached to it by writers on the law of nations." Page 452. It does not apply to a territory. New Orleans v. Winter, 1 Wheat. 92, 4 L. ed. 44; Miners Bank v. Iowa, 12 How. 1, 13 L. ed. 867. The case at bar is likewise one as to judicial procedure, and there must be applied the general principle that the word "state" as used in the Constitution and laws of the United States technically refers to a member of the American Union, and that it is only exceptionally applied to territories. To embrace territory it must appear that the provision in question comes within some different policy of the law. This cannot be said to be the case here.

6. It should be noted, moreover, that Porto Rico does not come within the class of territories to which heretofore the word "state" has usually been applied. In the Insular Cases, 182 U. S. 1, 45 L. ed. 1041, 21 Sup. Ct. Rep. 743, it was decided by the Supreme Court that the United States could hold possessions which it did not intend or was not ready to incorporate in the Union of states. This distinction of territories incorporated into the Union, and those not so incorporated, has not been used in recent legislation, but is derived from treaties, and is now firmly established in American jurisprudence. Inasmuch as the word has not been used in legislation, it is difficult to tell when the line has been passed separating incorporation from previous unincorporation. This court in the Tapia Case recently came to the conclusion that there were sufficient indicia of incorporation to determine that Porto Rico was incorporated into the Union. 9 Porto Rico Fed. Rep. 453, 455. This conclusion was reversed by the Supreme Court of the United States without filing an opinion. The conclusion, however, would seem to be that, while incorporation into the Union ipso facto confers citizenship, the grant of citizenship in express terms does not mean incorporation into the Union. It may well be that the geographical position of Porto Rico made it inadvisable to hamper the political department of the government in its dealings with other communities in the West Indies. What is the effect of this? It does not follow that Porto Rico is a state in any sense of the word. It is true that, if a United States district court were established in Santo Domingo to take care of American interests there, as indeed one is established in China, this would not make the independent state of Santo Domingo any more than it does the

X. Porto Rico.—25.

independent State of China a "state" within the scope of §
266 of the Judicial Code of the United States. Santo Domingo
and China would be foreign states, without the purview of the
statute. The general political condition of Porto Rico remains
as it was before the Jones Act, that is to say, it is a possession,
or territory not incorporated into the Union. Although not
incorporated into the Union, Porto Rico is nevertheless a com-
pletely organized territory, and as such enjoys the right that
the governor of any organized territory has to issue requisi-
tions for the return of fugitive criminals under Rev. Stat.
§ 5219, Comp. Stat. 1916, § 9784; New York ex rel. Kopel
v. Bingham, 211 U. S. 468, 53 L. ed. 286, 29 Sup. Ct. Rep.
190. It would seem, therefore, that the distinction between
an incorporated and an unincorporated territory is not mate-
rial for present purposes. This concerns its political rela-
tion to the Union, rather than the civil rights of the residents.
The Bill of Rights in the Jones Act brings with it the Con-
stitution except as to juries.

It should be noted that, while this discussion has been based
upon the question of constitutionality, the bill also raises
the question of the power of the legislature under the Organic
Act, and asserts the act is ultra vires. This in no event would
call for the assistance of other judges. From all points of view,
therefore, it follows that § 266 of the Judicial Code is not
locally applicable in Porto Rico, and that the motion that this
judge shall call to his assistance two other judges for the hear-
ing of the injunction in question must be denied.

It is so ordered.